Dear Thomas M. Middleton, Peter A. Hammen
Congress recently enacted the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "2008 Parity Act"), which builds upon the provisions of an earlier federal law known as the Mental Health Parity Act of 1996 (the "1996 Parity Act"). Together, those laws (collectively, the "federal Parity Acts") establish various requirements for certain health plans that offer mental health benefits and substance abuse benefits. Maryland statutes governing health insurance and health maintenance organizations ("HM Os") mandate certain mental health benefits, but are not identical to the federal Parity Acts and include certain limitations.
You have asked for our opinion concerning the relation of federal law, as amended by the 2008 Parity Act, to Maryland law, and specifically how each health insurance market in the State is affected by the recent federal legislation. In particular, you ask about the impact of the 2008 Parity Act on Annotated Code of Maryland, Insurance Article ("IN"), § 15-802, which, among other things, contains specific cost-sharing requirements for outpatient treatment and specifies a maximum copayment for methadone treatment. You also ask about the impact of the federal law on IN § 15-840, which mandates coverage of medically necessary residential crisis services.
For the reasons set forth in this opinion, the 2008 Parity Act affects various segments of the health insurance market as follows: *Page 4 
1. The 2008 Parity Act does not affect Maryland law as it applies to individual non-group policies or small group policies (defined as those covering at least two but not more than 50 employees). The mandates and specific limitations outlined in State law continue to apply. Small employers that self-insure are not subject to State law mandate.
2. The 2008 Parity Act applies to large group health insurance policies and to self-insured large group plans provided through employers.
3. Large group policies (defined as a health insurance policies covering more than 50 employees) are regulated by a combination of State and federal law concerning mental health and substance abuse benefits. Mandates in Maryland law remain effective. Pursuant to the federal law, these benefits must be offered with financial limitations, cost sharing requirements, and treatment limitations that are no more restrictive than the requirements and limitations that apply to the "predominant" medical and surgical benefits in the policy. Maryland law is preempted by the 2008 Parity Act to the extent that Maryland provisions would allow mental health and substance abuse benefits to be delivered with more restrictive coverage rates and other treatment limitations. If the policy offers an out-of-network benefit for medical and surgical services, then the policy must also offer an out-of-network benefit for mental health and substance abuse services.
4. Self-insured health plans of private employers are generally not governed by State law due to preemption of State laws that relate to employee benefit plans by the Employee Retirement Income Security Act ("ERISA"). Accordingly, these plans are governed by federal law. For employers offering large group plans, the Parity Acts, not State law, govern mental health and substance abuse benefits. While these large group plans are not required to offer mental health and substance abuse benefits, if a plan does contain such benefits, the financial limitations, cost sharing requirements and treatment limitations may not be more restrictive than the predominant limitations on the medical and surgical benefits in the plan. And, if the plan offers an out-of-network benefit for medical and surgical services, then the plan must also offer an out-of-network benefit for mental health and substance abuse services.
5. Employers that are eligible to self-insure under federal law, but instead choose to purchase a state-regulated insurance policy from a carrier, must provide mental health and substance *Page 5 
abuse services pursuant to M aryland law. For employers purchasing a small group policy, the benefits outlined in Maryland law by the Maryland Health Care Commission will apply. In the large group market, the federal law will preempt some portions of Maryland law, ensuring that these benefits are offered with financial limitations, cost sharing requirements and treatment limitations that are no more restrictive than the predominant limitations on the medical and surgical benefits in the policy. If the policy offers an out-of-network benefit for medical and surgical services, then the policy must also offer an out-of-network benefit for mental health and substance abuse services.
With respect to your questions about the impact of the 2008 Parity Act on specific sections of Maryland law, we conclude that some provisions of IN § 15-802 and Health-General Article ("HG") § 19-703.1 — in particular, cost sharing requirements for outpatient coverage, minimum day limits for partial hospitalization, and maximum copayments for methadone maintenance treatment — are preempted with respect to large group policies to the extent that those provisions would render coverage more restrictive than coverage for physical illnesses. Section 15-840 of the Insurance Article (coverage for medically necessary residential crisis services), however, is not preempted. In addition, IN § 15-824
(coverage for maintenance drugs), and IN § 15-831 (coverage of prescription drugs) are not preempted.
Finally, you asked whether "corrective" State legislation is necessary in light of the 2008 Parity Act. To the extent that the federal law preempts State law, it does so by virtue of the Supremacy Clause in Article VI of the United States Constitution and there is no legal requirement to amend State law to recognize that preemption.
 I The Federal Parity Acts
A. 1996 Parity Act
More than a decade ago, Congress enacted the initial federal mental health parity law, the Mental Health Parity Act of 1996. Pub.L. 104-204, Title VII, 110 Stat. 2944 (1996). By means of virtually identical new sections added to both ERISA and the Public Health Service Act ("PHSA"), the 1996 Parity Act established certain requirements for mental health benefits offered in large *Page 6 
group health plans provided through employers.[1] In conjunction with the Health Insurance Portability and Accountability Act ("HIPAA"), [2]
passed the same year, the provisions of the 1996 Parity Act preempted state laws "to the extent that [a] standard or requirement [of state law] prevents the application of a requirement of [the 1996 Parity Act]."[3]
The 1996 Parity Act did not require large group plans to offer mental health benefits. 29 U.S.C. § 1185a(b)(1).[4] However, those plans that chose to offer mental health benefits were prohibited from setting annual or lifetime dollar limits on mental health benefits that *Page 7 
were lower than any such dollar limits for medical and surgical benefits. 29 U.S.C. § 1185a(a)(1)-(2). In particular, plans could impose aggregate annual and lifetime limits subject to the following restrictions: (1) if the plan did not impose limits on medical and surgical benefits, no such limits could be imposed on any mental health benefits; and, (2) if a plan did impose limits on medical and surgical benefits, the plan had to impose either the same limits on mental health benefits or could not impose a limit on mental health benefits that was less than the limit on medical and surgical benefits. Id.
Large group plans could, however, impose other conditions such as cost sharing, limits on the number of visits or days of coverage, and duration and scope of mental health benefits. 29 U.S.C. § 1185a(b)(2) (as enacted in 1996). The 1996 Parity Act did not apply to a group health plan of a "small employer" — defined generally as an employer with at least two, but no more than 50, employees.29 U.S.C. § 1185a(c)(1). Nor did it apply if its application to a plan would result in an increase of 1% or more in the cost for such coverage.29 U.S.C. § 1185a(c)(2).
B. 2008 Parity Act
The 2008 Parity Act was recently enacted as part of federal omnibus legislation. Pub.L. 110-343, 122 Stat. 3765, 3881 (2008). The 2008 Parity Act builds upon the earlier federal parity law, [5] but alters the nature of the mental health benefits large group plans must provide. Like the earlier law, the 2008 Parity Act does not mandate *Page 8 
that large group plans offer mental health benefits.[6] If, however, a plan chooses to offer its members mental health benefits in addition to medical and surgical benefits, the 2008 Parity Act specifies the manner in which those benefits must be covered. In addition, the 2008 Parity Act extends the parity provisions to "substance use disorder benefits."
Definition of Benefits Covered by the Parity Acts
The 2008 Parity Act defines mental health benefits and substance use disorder benefits to mean, respectively, benefits with respect to services for mental health conditions and benefits with respect to services for substance use disorders, as defined under the terms of the plan and in accordance with Federal and State law. Thus, the phrase "substance use disorder benefits" presumably denotes the same types of benefits as the phrase "substance abuse benefits" in State law.[7]
 Prohibition against Special Cost-Sharing or Treatment Limitations
In a new provision, the 2008 Parity Act restricts elements of a health plan that would impose separate cost-sharing and treatment limitations for mental health benefits. 29 U.S.C. § 1185a(a)(3). In particular, "financial requirements" applicable to mental health benefits may not be more restrictive than the "predominant" financial requirements applied to substantially all of the medical and surgical benefits covered by the plan. 29 U.S.C. § 1185a(a)(3)(A)(i). "Financial requirements" are defined to include deductibles, copayments, coinsurance, and out-of-pocket expenses. 29 U.S.C0. *Page 9 
§ 1185a(a)(3)(B)(i).[8] A financial requirement is considered "predominant" if it is the most common or frequent of such type of limit or requirement in the plan. 29 U.S.C. § 1185a(a)(3)(B)(ii).
Similarly, a plan cannot impose separate "treatment limitations" that are applicable only to mental health benefits.29 U.S.C. § 1185a(a)(3)(A)(ii). A "treatment limitation" is defined as any limit "on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment."29 U.S.C. § 1185a(a)(3)(B)(iii). In addition, treatment limitations for mental health benefits may not be more restrictive than the predominant treatment limitations applied to substantially all of the medical and surgical benefits covered by a plan. 29 U.S.C. § 1185a(a)(3)(A)(ii).
Benefits with Respect to Out-of-Network Providers
Under another new provision, a plan that provides coverage for medical or surgical benefits provided by out-of-network providers must also provide coverage for mental health benefits provided by out-of-network providers. 29 U.S.C. § 1185a(a)(5).
Summary of Parity Provisions
Thus, while the federal Parity Acts do not require the inclusion of mental health benefits, if a plan chooses to provide such benefits, they must be delivered to those covered by the plan in a manner that is no more restrictive than the delivery of substantially all of the medical and surgical benefits provided by the plan. This includes parity in deductibles, copayments, coinsurance, out-of-pocket expenses, treatment limitations and out-of-network coverage.
Disclosure of Information
The 2008 Parity Act requires a plan to disclose the criteria it uses to make medical necessity determinations with respect to mental health benefits. 29 U.S.C. § 1185a(a)(4). In addition, a plan must make available the reason for any denial of such benefits. Id. *Page 10 
These disclosures are to be made in accordance with regulations to be issued under the Act.
Modified Cost Exemption
The 2008 Parity Act also modified the cost exemption contained in the prior law. 29 U.S.C. § 1185a(c)(2). If the application of the federal Parity Acts would result in specified percentage increases in plan costs, a plan that offers mental health benefits may claim an exemption from the provisions of the federal Parity Acts for the following year.[9] Id. The cost exemption is not mandatory; a plan may elect to continue to comply with the Parity Act regardless of the amount of increase in total costs.
Preemption of State Law
The 2008 Parity Act did not make any changes to the HIPAA preemption provision that is applicable to the 1996 Parity Act. Thus, only a State law that "prevents the application of a requirement" of the federal parity laws is preempted. State laws that do not "prevent the application" of federal law to insurance plans continue in effect. A provision added by the 2008 Parity Act requires the Secretary of Labor to provide guidance concerning, among other things, the operation of the new law and its impact on State law. 29 U.S.C. § 1185a(g).
We next examine current Maryland law concerning mandated mental health benefits and the impact of the federal preemption provision in light of the requirements added by the 2008 Parity Act. *Page 11 
 II Relation of the Parity Acts to Maryland Law
A. Application of State Law to Health Insurance Policies andSelf-Insured Plans
Maryland law regulates health insurance policies issued by insurance carriers in the individual, small group, and large group markets. In ERISA, Congress preempted state laws "insofar as they may now or hereafter relate to any employee benefit plan. . . ." ERISA, § 514(a),29 U.S.C. § 1144(a).[10] Thus, as a result of ERISA preemption, federal law and not State law, governs a health plan of an employer that is eligible to self-insure[11] and does so.[12]
Eligibility to self-insure is not a requirement to do so, and an employer may instead choose to provide health benefits by purchasing a health insurance product. State law regarding insurance is not preempted by ERISA. See Kentucky Ass'n of Health pPlans, Inc. v. Miller,538 U.S. 329 (2003); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724
(1985). If an employer purchases a health insurance product from an insurance company, the benefits provided by that insurance product are regulated by Maryland law. *Page 12 
B. Mandated Mental Health Benefits under Maryland Law
Two parallel Maryland statutes applicable to health insurance policies contain parity provisions related to mental health and substance use disorder benefits, the latter category generally described in State law as treatment for drug and alcohol abuse. One statute sets forth requirements for large group and individual health insurance policies.See IN § 15-802. The other applies identical standards to HMOs.See HG § 19-703.1.
Unlike the federal Parity Acts, Maryland law mandates that health insurance policies contain specific benefits for mental health services.[13] The Maryland statutes start from the premise that a policy unlawfully discriminates against individuals "with a mental illness, emotional disorder, or drug abuse disorder, or alcohol abuse disorder by failing to provide benefits for the diagnosis and treatment of these illnesses under the same terms and conditions that apply under the policy or contract for the diagnosis and treatment of physical illnesses." IN § 15-802(c); see also HG § 19-703.1(b)(1) (similar language with respect to HMOs). The statutes then define a set of practices that do not constitute such discrimination, thus limiting the breadth of the mandate.
In particular, the statutes provide that a policy does not discriminate if it provides at least the following benefits:
 inpatient benefits — under the policy, the total number of days for which benefits are provided and the terms and conditions of benefits are at least equal to those provided for physical illnesses. *Page 13 
 partial hospitalization benefits[14] — the policy covers at least 60 days under the same terms and conditions that apply to benefits for physical illnesses.
 outpatient coverage — the policy provides benefits for covered expenses, after the applicable deductible, at a rate at least equal to 80% for the first five visits per calendar year or 12-month period; 65% for the sixth through 30th visits; and 50% for any subsequent visits.[15]
IN § 15-802(d); HG § 19-703.1(b)(2). The mandate applies only to expenses for conditions that are treatable and for treatments that are medically necessary. IN § 15-802(e)(1); HG § 19-703.1(c)(1). The mental health and substance abuse benefits are to be provided as one set of benefits under the same terms and conditions as benefits for physical illnesses and may be provided through a managed care system. IN § 15-802(e)(2); HG § 19-703.1(c)(2)-(4).
The Maryland statutes also generally require parity in cost-sharing requirements. In particular, a policy may not have separate lifetime maximums, deductibles, coinsurance amounts, or out-of-pocket limits for benefits related to mental health and substance abuse treatment benefits, compared to the limits for benefits related to physical illnesses.[16] IN § 15-802(e)(3); HG § 19-703.1(c)(5). However, there is an exception to this rule for the coinsurance requirements established for outpatient treatment related to mental health or substance abuse benefits. See IN § 15-802(d)(3); HG § 19-703.1(b)(2)(iii). There is also a specific limitation in the statute on copayments for methadone maintenance treatment — they may not be *Page 14 
more than 50% of the daily cost. IN § 15-802(e)(4)(ii); HG § 19-703.1(c)(6)(ii).
Several provisions in the Insurance Article mandate particular types of coverage for health insurance policies and HMO contracts that are issued or delivered in the State. In particular, benefits must be provided for medically necessary residential crisis services. IN § 15-840(c). Such services are defined as mental health and support services provided in a community-based residential setting to an individual with a mental illness in an effort to prevent or shorten a psychiatric inpatient admission. IN § 15-840(a).
Benefits must also be provided to allow an insured or enrollee to receive up to a 90-day supply of maintenance drugs in a single dispensing.[17] IN § 15-824(d)(1). Similarly, policies subject to Maryland law must establish and implement a procedure by which a member may receive a prescription drug that is not on the prescription drug formulary. Coverage for non-formulary drugs is required when, in the judgment of an authorized prescriber, there is no equivalent drug available on the formulary or the equivalent drug has been ineffective or produced an adverse condition or harm to the member. IN § 15-831(c) and (d).
C. Preemptive Effect of Federal Parity Acts
As noted above, the Parity Acts apply only to large group plans and policies offered through employers.
Individual Market
The individual market is not affected by the federal Parity Acts; thus, current Maryland law outlining the required mental health and substance abuse benefits in the individual market, along with any allowable limitations in this coverage, continues to apply to individual policies without change. *Page 15 
 Small Group Market
Maryland law generally defines a small group employer as one that employs at least two but not more than 50 employees. IN § 15-1203(b). Because the federal Parity Acts do not apply to "small employers" (defined in similar terms to Maryland law), see 29 U.S.C. § 1185a(c)(1), they do not affect the small group market. The mandates of Maryland law, as well as its limitations, continue to apply to employers who purchase small group policies.
Large Group Market
The federal Parity Acts do, however, apply to the large group market — i.e., plans with more than 50 employees — regardless of whether the plan is a large group insurance policy regulated by State law or a self-insured plan.[18] However, Maryland's mandate that a large group policy provide mental health and substance abuse benefits does not "prevent the application of" the federal Parity Acts; therefore, the mandate itself is not preempted and remains in effect. (As noted above, the mandates do not apply to self-insured plans as a result of a separate federal preemption provision under ERISA). To the extent that M aryland law allows certain practices that provide a reduced level of benefits for mental health and substance abuse benefits compared to medical and surgical benefits, those provisions prevent the application of the Parity Act as to large group policies and are preempted.
What portions of Maryland law are preempted by the Parity Acts? Maryland law allows carriers to place limitations on mental health benefits that may not be placed on benefits for physical illness in several areas. For example, carriers are not required to cover more than 60 days of partial hospitalization for mental illness under the same conditions for which they cover partial hospitalization for physical illness. See IN § 15-802(d)(2); HG § 19-703.1(b)(2)(ii). Maryland law does not consider it discriminatory for carriers to reimburse covered expenses for outpatient coverage of mental illness *Page 16 
at gradually decreasing levels. For example, a carrier may pay 80% of covered expenses for the first five outpatient visits in a calendar year, then pay only 65% of the covered expenses for the sixth through the thirtieth visit. IN § 15-802(d)(3)(i) and (ii) and HG § 19-703.1(b)(2)(iii). Carriers may also charge a copayment for methadone maintenance treatment that is up to fifty percent (50%) of the daily cost of the treatment. IN § 15-802(e)(4)(ii); HG § 19-703.1(c)(6)(ii).
Unless the types of financial and treatment limitations in a policy allowed by Maryland law for mental health and substance abuse benefits are no more restrictive than the "predominant" financial and treatment limitations applied to all medical and surgical benefits by a carrier, these limitations on mental health benefits allowed by Maryland law "prevent the application" of the Parity Acts as to large group policies and are preempted.[19]
Some of Maryland's mandated benefits that relate to mental health and substance abuse benefits do not prevent the application of the Parity Act; therefore, these provisions are not preempted. For example, as noted above, IN § 15-840 mandates coverage for medically necessary residential crisis services. In mandating this coverage, the statute does not specify any allowable financial requirements, cost sharing requirements or treatment limitations that differ from those for medical and surgical benefits. As such, the Maryland law does not prevent the application of the Parity Acts, and the mandate to provide residential crisis services remains intact. It is important to note, however, that to the extent that a health insurance carrier's large group policy is currently imposing financial limitations, cost sharing requirements, or treatment limitations when providing residential crisis services, the carrier is no longer able to impose such limitations or requirements in a large group policy under the Parity Act.
Similarly, Maryland law outlines specific requirements regarding coverage of maintenance medications and prescription medications in large group policies that contain prescription drug benefits.See IN §§ 15-824, 15-831. While these sections do not mention mental health and substance abuse benefits specifically, to the extent that treatment for either of these conditions involves *Page 17 
medications, these provisions apply to mental health and substance abuse treatment. Neither of these sections sets forth any specific allowable limitations on coverage of medications as that coverage relates to mental health or substance abuse treatment. Thus, application of these sections does not prevent the application of the Parity Act and Maryland law is not preempted. However, as with the mandate for residential crisis services, if a large group policy contains financial limitations, cost sharing requirements or treatment limitations with regard to prescription medications for mental health or substance abuse treatment that are not being imposed with regard to medical or surgical coverage, such limitations will be prohibited by the 2008 Parity Act.
Finally, Maryland law does not allow separate lifetime maximums for physical illness and illnesses related to mental health or substance abuse. See IN § 15-802(e)(3)(i) and HG § 19-703.1(c)(5)(i). These laws do not prevent the application of the Parity Act; therefore, these provisions are not preempted.
 III Conclusion
In summary, any State law that applies to large group policies and that "prevents the application" of the federal Parity Acts is preempted by federal law. The resulting impact of preemption by the federal Parity Acts is as follows:
 • Individual policies and policies not provided though an employer are not affected by the Parity Acts. Any State mandates and limitations that apply remain in effect.
 • Self-insured plans of private employers are not subject to Maryland law due to federal preemption under ERISA and are governed solely by federal law. Small group plans are specifically exempted from the Parity Acts; thus, the Parity Acts do not apply to employers that choose to self-insure a small group plan. If an employer is eligible to self-insure, but elects to purchase a small group health insurance product, the mandates and specific limitations outlined in State law apply. *Page 18 
 • The Parity Acts apply to self-insured large group plans; however, the mandates in Maryland law do not apply to such plans. Employers that choose to self-insure and offer a large group plan do not have to offer mental health and substance abuse benefits; however, if a plan does contain such benefits, the financial limitations, cost sharing requirements and treatment limitations may not be more restrictive than the predominant limitations on the medical and surgical benefits in the plan. And, if the plan offers an out-of-network benefit for medical and surgical services, then the plan must also offer an out-of-network benefit for mental health and substance abuse services.
 • Large group health insurance policies are governed by a combination of State and federal law. Mandates in Maryland law concerning mental health and substance abuse benefits remain applicable to those policies, but any provisions in State law that allow financial, cost sharing and treatment limitations more restrictive than those for medical and surgical benefits are preempted by the 2008 Parity Act. Thus, provisions in Maryland law allowing these benefits to be delivered with cost sharing requirements for outpatient coverage, minimum day limits for partial hospitalization, and maximum copayments for methadone maintenance treatment are preempted to the extent that they are more restrictive than the equivalent requirements with respect to physical illnesses. If the policy offers an out-of-network benefit for medical and surgical services, the policy must also offer an out-of-network benefit for mental health and substance abuse services.
 • If an employer is eligible to self-insure, but elects to purchase a large group insurance product, State mandates apply unless preempted by the federal Parity Acts as outlined above.
 • Provisions in Maryland law mandating coverage for medically necessary residential crisis services, and setting specific requirements related to the coverage of maintenance drugs and prescription drugs are not preempted by the Parity Acts. However, if carriers are placing any limitations in their large group health insurance policies regarding these services, such *Page 19 
limitations will no longer be allowed unless they are also the predominant limitations in the policy for medical and surgical benefits.
Finally, you also asked whether "corrective" State legislation is necessary in light of the 2008 Parity Act. To the extent that the federal law preempts State law, it does so by virtue of the Supremacy Clause in Article VI of the United States Constitution and there is no legal requirement to amend State law to recognize that preemption. If the General Assembly wishes to amend Maryland law to recognize the areas of federal preemption, we would be happy to assist in that effort. In drafting amendments to Maryland statutes for that purpose, it would be appropriate to take into account the guidance that the Secretary of Labor is to provide states pursuant to the 2008 Parity Act.
 Douglas F. Gansler Attorney General
 Ellen L. Kuhn Assistant Attorney General
 Robert N. McDonald Opinions and Advice
[1] ERISA § 712, 29 U.S.C. § 1185a; PHSA, § 2705, 42 U.S.C. § 300gg-5. The following year, as part of the Taxpayer Relief Act of 1997, a new provision was added to the Internal Revenue Code to establish a tax penalty for group plans that failed to comply with the provisions of the 1996 Parity Act. See Pub.L. 105-34, § 1531, 111 Stat. 788, 1080-83
(1997), codified at 26 U.S.C. § 9812.
[2] Pub.L. 104-191, 110 Stat. 1936 (1996). HIPAA was intended to serve several purposes — protecting health care coverage for workers and their families during a change or loss of employment, setting national standards for electronic health care transactions, and mandating certain provisions for the security and privacy of health information.See 88 Opinions of the Attorney General 205, 206-7 (2003); see also
website of Centers for Medicare and Medicaid Services,http://www.cms.hhs.gov/EducationMaterials/;http://www.cms.hhs.gov/HIPAAGenInfo/.
[3] The origin and application of this preemption standard are somewhat convoluted. In 1996, as part of HIPAA, Congress added identical preemption provisions to Title XXVII of the Public Health Service Act and Title VII of ERISA when it enacted certain provisions in each of those statutes limiting exclusions for pre-existing conditions and mandating certain coverage of mothers and newborns. Pub.L. 104-191, §§ 101(a), 102(a) (1996). See Medill, HIPAA and its Related Legislation:A New Role for ERISA in the Regulation of Private Health CarePlans?, 65 Tenn. L.Rev. 485, 502-3 (1998). Concurrently, the provisions of the 1996 Parity Act were included in the same titles of ERISA and the Public Health Service Act and, accordingly, had the same preemptive effect on state laws. Pub.L. 104-204, Title VII, 110 Stat. 2944
(1996).
[4] In referencing specific provisions of the two federal Parity Acts, this opinion will cite the provisions as they appear in ERISA. As explained in note 1 above, parallel provisions appear in the PHSA,42 U.S.C. § 300gg-5, and the Internal Revenue Code, 26 U.S.C. § 9812.
[5] The 2008 Parity Act amends the provisions of ERISA and the PHSA that were enacted by the 1996 Parity Act — i.e., ERISA, § 712,29 U.S.C. § 1185a, and PHSA, § 2705, 42 U.S.C. § 300gg-5. In addition, it amends the section of the Internal Revenue Code that was added in 1997 to enforce compliance with the mental health benefits parity provisions — 26 U.S.C. § 9812.
The changes made by the 2008 Parity Act apply to plan years beginning on or after October 3, 2009. See Pub.L. 110-343, § 512(e). Before that date, the Secretaries of Labor, Health and Human Services, and the Treasury are to issue regulations to carry out the new provisions.Id., § 512(d). Special rules apply in connection with plans governed by collective bargaining agreements. Id.
[6] While the Parity Acts do not mandate that large group plans offer mental health services, carriers may be required to provide such services as part of their large group policies under the laws of a particular state. See Part II.A of this opinion below concerning such requirements under Maryland law.
[7] In referring to the 2008 Parity Act, this opinion uses the phrase "mental health benefits" to encompass both mental health benefits and "substance use disorder benefits."
[8] Aggregate lifetime limits and annual limits are excluded from the definition of "financial requirements"; requirements in the 1996 Parity Act concerning those limits remain in the law. See29 U.S.C. § 1185a(a)(1)-(2).
[9] A 2% increase in actual total costs of coverage with respect to medical and surgical benefits and mental health and substance use disorder benefits triggers the exemption in a plan's first year under the 2008 Parity Act; a 1% increase triggers the exemption in subsequent years. 29 U.S.C. § 1185a(c)(2). The determination of the increase of total costs must be made by an actuary, and this determination cannot be made until a plan has provided mental health benefits for at least six months. Id. A plan that invokes this exemption must notify the federal government, appropriate state agencies, and the beneficiaries of the plan. 29 U.S.C. § 1185a(c)(2)(E). The plan's compliance with the exemption provision is subject to audit by federal and state agencies.29 U.S.C. § 1185a(c)(2)(F).
[10] Preemption under this provision of ERISA is, of course, distinct from the HIPAA preemption provision under which the Parity Acts preempt some state laws. See Part I.A of this opinion.
[11] Pursuant to federal law, employers engaged in commerce or in any industry or activity affecting commerce, or an employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce, or both are eligible to self-insure. 29 U.S.C. § 1003(a).
[12] Governmental and certain church-related plans are generally exempt from ERISA. When fully insured, such plans are subject to State insurance law mandates. However, even governmental plans that are self-funded and exempt from ERISA and State insurance regulations will still be affected by the federal Parity Acts. See Part II.C of this opinion and note 18 below.
[13] With respect to small group employers that choose to purchase an insurance product, State law mandates specific benefits. Those benefits, called the Comprehensive Standard Health Benefit Plan, are set forth in regulations adopted by the Maryland Health Care Commission. See IN § 15-1207; HG § 19-108. See also COMAR 31.11.06.
[14] The statutes define "partial hospitalization" as "the provision of medically directed intensive or intermediate short-term treatment" for a period of more than four, but less than 24, hours per day. IN § 15-802(a)(5); HG § 19-703.1(a)(5).
[15] Office visits to a physician for medication management are not counted against the number of visits required to be covered. IN § 15-802(f)(1); HG § 19-703.1(e).
[16] Also, copayments for mental health or substance abuse benefits are to be actuarially equivalent to coinsurance requirements under the statute or, if there is no coinsurance requirement, no greater than copayments for treatment for a physical illness. See IN § 15-802(e)(4); HG § 19-703.1(c)(6).
[17] The law does not apply to residents of nursing homes, and the law does not apply to the first prescription or change in a prescription for a maintenance drug. The drug must be prescribed by an authorized prescriber. IN § 15-824(c) and (d)(2).
[18] As noted above, some large group plans, such as the self-funded plans in the State Employee and Retiree Health and Welfare Benefits Program, are not subject to State insurance law or to ERISA. These plans, however, are subject to the Public Health Service Act. Governmental large group plans must comply with the provisions of the PHSA, including the provisions found in the federal Parity Acts, unless the plan makes an election to be excluded. See42 U.S.C. § 300gg-21(b)(2).
[19] If the Parity Acts do not apply as a result of the cost exemption, see Part I.B. footnote 9 above, then the State mandates presumably remain applicable with respect to large group health insurance policies. *Page 20